Chief Justice MARTIN concurring in the result only.
In this case, we must decide whether the district court had the power to modify a child support order even though no party had filed a motion in the cause. Under subsection 50-13.7(a) of our General Statutes, "an order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances." N.C.G.S. § 50-13.7(a) (2015) (emphasis added). Here, the district court acted only after defendant had entered into a proposed Modified Voluntary Support Agreement and Order (the consent order), which the parties then submitted to the district court for approval. Because the consent order served as the functional equivalent of a joint motion, I concur in the result that the majority opinion reaches.
But I do not concur in the majority's reasoning, as the majority's rationale seems to extend much further than the context of this case. Because it holds that the "motion in the cause" language of subsection 50-13.7(a) is directory rather than mandatory, the majority seems to allow a district court to modify a child support order-and thus to alter the legal rights and duties of the parties involved-sua sponte, without any party invoking the court's power. This rule, if the majority is indeed establishing it, ignores the plain language of the very statutory provision that gives district courts the power to modify these kinds of orders. It also potentially subverts the customary role that courts play in our adversarial system: to rule on the issues actually raised and argued by the parties. This seems imprudent at best, and may raise serious jurisdictional **98 concerns as well. I therefore write separately to express my opinion that the majority's reasoning should be read narrowly.
This Court said in State v. House that, "[i]n determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration." 295 N.C. 189, 203, 244 S.E.2d 654, 661 (1978) (quoting 73 Am. Jur. 2d Statutes § 19, at 280 (1974) ). "Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory." Id. at 203, 244 S.E.2d at 661-62 (quoting 73 Am. Jur. 2d Statutes § 19, at 280). Under this standard, a provision that requires a motion in order for a district court to modify an existing support order should be viewed as mandatory for several reasons.
First of all, the motion requirement in subsection 50-13.7(a) is not "a mere matter of form." It defines both the role of the parties and the role of the court in child support proceedings. If a party wishes to have a child support order modified, that party must file a motion in the cause and serve it on the opposing party. That gives the opposing party notice of the motion and the chance to present arguments opposing it. And that is how our adversarial system normally operates. But parties have no opportunity to contest a potential modification when a court acts sua sponte. Granting a court the power to act sua sponte in this context, as the majority appears to do, both destabilizes already concluded agreements and affects the substantial rights of parties who rely on those agreements. Parties also have an interest in the finality of judgments and the repose that they provide. Under the majority's apparent rationale, though, cases once resolved could be reopened even though neither party wants to continue litigating.
In re T.R.P. is an analogous case. There, we held that a statutory provision requiring a verification signature on a juvenile petition-the lack of which would in many cases be a simple oversight-was mandatory. 360 N.C. 588, 598, 636 S.E.2d 787, 794-95 (2006). Requiring the verification procedure "respect[ed] both the right to family autonomy and the needs of the child." Id. at 598, 636 S.E.2d at 794. A similar logic motivates the language of subsection 50-13.7(a). A district court can always modify a support order on request of a party who shows a change in circumstances and good reason to modify the *485 order. But if the majority ruling is read to permit even sua sponte modifications, it would disturb several decades of Court of Appeals precedent that domestic relations parties and social services agencies throughout North Carolina have **99 presumably come to rely on. See Royall v. Sawyer , 120 N.C. App. 880, 882, 463 S.E.2d 578, 580 (1995) (concluding that a child support agreement could not be modified without a motion to modify the agreement); Kennedy v. Kennedy , 107 N.C. App. 695, 703, 421 S.E.2d 795, 799 (1992) (noting that a district court may modify a custody order only upon a motion by either party or by anyone interested); Smith v. Smith , 15 N.C. App. 180, 182-83, 189 S.E.2d 525, 526 (1972) (holding that it was error for the trial court to modify a custody and support order when the only question before the trial court at the time was alimony).
I would also observe that the General Assembly has not amended the motion requirement in subsection 50-13.7(a) in response to this longstanding Court of Appeals precedent. That suggests that the Court of Appeals correctly understood the General Assembly's intent, or, at a minimum, that the General Assembly has acquiesced to the Court of Appeals' reading. "The legislature's inactivity in the face of the [judiciary's] repeated pronouncements [on this issue] can only be interpreted as acquiescence by, and implicit approval from, that body." In re T.R.P. , 360 N.C. at 594, 636 S.E.2d at 792 (alterations in original) (quoting Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co. , 332 N.C. 1, 9, 418 S.E.2d 648, 654 (1992) ).
The majority holds that a district court's failure to observe subsection 50-13.7(a)'s motion requirement is not jurisdictional, but I believe that it may very well be. At the very least, the majority does not establish that it is not. The majority's discussion of jurisdiction establishes only that the district court here had continuing jurisdiction over this case and these parties. That is clear. But by focusing on continuing jurisdiction, the majority ducks the real issue: whether, in the absence of a motion or its functional equivalent, a district court has the power to modify a child support order, or instead lacks the power to do so unless and until it receives a request from an interested party to modify the order.
The term "[j]urisdiction" refers to "[a] court's power to decide a case or issue a decree ." In re M.I.W. , 365 N.C. 374, 379, 722 S.E.2d 469, 473 (2012) (second set of brackets in original) (emphasis added) (quoting Black's Law Dictionary 927 (9th ed. 2009)). "[H]aving jurisdiction is simply a state of being that requires, and in some cases allows, no substantive action from the court." Id. at 379, 722 S.E.2d at 473. Put another way, in our adversarial system of justice, a court with jurisdiction sometimes cannot act-at least not until a party has asked it to. A court that has subject-matter jurisdiction over a case and personal jurisdiction over the parties may thus still lack the "power to grant the relief contained in [its] judgment."
**100 Ellis v. Ellis , 190 N.C. 418, 421, 130 S.E. 7, 9 (1925) (quoting 1 A. C. Freeman, Freeman on Judgments § 116 (4th ed. 1892)). And a court that enters a judgment without the power to do so "acts in excess of jurisdiction." Id. (quoting 1 A. C. Freeman, Freeman on Judgments § 116 (4th ed. 1892)). That judgment is therefore void and "may be impeached collaterally or by direct attack." Id. at 421-22, 130 S.E. at 9 ; see also State ex rel. Hanson v. Yandle , 235 N.C. 532, 535, 70 S.E.2d 565, 568 (1952) ("If the court was without authority, its judgment ... is void and of no effect. A lack of jurisdiction or power in the court entering a judgment always avoids the judgment...."). Hence the concern here: a district court that ignores a mandatory motion requirement in issuing an order may well be acting in excess of its jurisdiction, and its order may well be void.
Defending its position, the majority notes that "the jurisdiction of the court entering ... a [child support] decree continues as long as the minor child whose custody is the subject of the decree remains within its jurisdiction," quoting Stanback v. Stanback , 287 N.C. 448, 456, 215 S.E.2d 30, 36 (1975). But again, the issue here is not whether the district court had continuing jurisdiction, but whether the district court exceeded the scope of its jurisdiction.
A court can, of course, dismiss a case sua sponte for lack of subject-matter jurisdiction, see N.C. R. Civ. P. 12(h)(3) ; accord *486 Fed. R. Civ. P. 12(h)(3), but that is one of the few exceptions that proves the rule. Many other things, including personal jurisdiction, are waivable and should not be raised sua sponte. See N.C. R. Civ. P. 12(h)(1) ; accord Fed. R. Civ. P. 12(h)(1). Courts always have jurisdiction to determine subject-matter jurisdiction, but they do not always have-in fact, they usually do not have-the power to determine other matters unless asked to do so by a party.
By ignoring the possibility that a district court that modified a support order sua sponte may be acting in excess of its jurisdiction, and by reading the standard for directory versus mandatory statutes in a way that strongly favors the "directory" label, the majority raises several troubling questions. What must the General Assembly do to make a procedural rule actually binding on the courts? Does the magic word "jurisdictional" now have to be in the statute's text? Would a court with both subject-matter and personal jurisdiction have the power to issue a summary judgment order when no party had moved for summary judgment? Would a court be able to issue a final judgment in a case that had disputed material facts in the absence of settlement or trial? These last two questions show the error in the majority's thinking, and the inconsistency of its reasoning with foundational principles of our adversarial **101 system: a district court can plainly have jurisdiction over a case but lack the power to issue a certain decree.
The consent order satisfied subsection 50-13.7(a)'s motion requirement, so the district court here did not act sua sponte. We therefore do not have to decide whether a district court that did act sua sponte in this context would be exceeding its jurisdiction. It is important, however, that we distinguish in future cases between a court's jurisdiction over a case, on the one hand, and a court's power to issue a particular order or remedy, on the other. Those two things are not the same. Accordingly, I concur in the result only.
Justice ERVIN joins in this concurring opinion.