DILLON, Judge, dissenting.
Based on In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), our panel is required to follow our holding in Painter-Jamieson v. Painter , 163 N.C. App. 527, 532-33, 594 S.E.2d 217, 221 (2004), that a distributive award is not part of the payor-spouse's estate. Our panel is following Painter , as we should. However, I write separately to dissent because I believe Painter was wrongfully decided and, in following Painter , Plaintiff has no remedy.
This matter involves two actions between the same parties, both of which are on appeal before our Court. Both parties were married to the same man (the "Decedent") at different times.
Plaintiff ("First Wife") was the Decedent's first wife. Defendant ("Second Wife") was Decedent's second wife and is his widow. When First Wife divorced Decedent, the district court entered an equitable distribution order awarding First Wife the survivor benefits from a military survivor benefit plan (the "SBP") in their divorce proceeding which was commenced in 1994. The order also provided that if Decedent failed to effect the transfer of the SBP benefits to First Wife, First Wife would be entitled to a distributive award from Decedent's estate in the amount equal to the SBP benefit.
Decedent never effectuated the transfer of the SBP benefits to First Wife; rather, he named Second Wife as the beneficiary of his SBP benefits.
Second Wife is the executor of Decedent's estate. First Wife made a claim in Decedent's estate proceeding for the distributive award. Second Wife, in her role as executor, denied the claim. So First Wife brought this action (which is the subject of this appeal-COA 18-524) to enforce her claim. Her claim was dismissed. Because of Painter , we are compelled *399 to affirm based on Painter's holding that her distributive award is not part of Decedent's estate, but is rather her property that Decedent happened to be holding at the time of his death.
First Wife, though, also filed a contempt motion in the 1994 district court action to hold her already-deceased husband in contempt for failing to name her as a beneficiary of the SBP. First Wife served the motion on Second Wife, as executor of Decedent's estate. The district court entered an order directing Second Wife to turn over the SBP benefits to First Wife. Second Wife appealed in a separate appeal (COA 18-341). In that appeal, we are reversing the district court's order based on the fact that federal law dictates that the SBP benefits are the property of Second Wife and that the district court is, therefore, powerless to direct Second Wife to part with her property to satisfy an obligation of Decedent.
For the reasons explained below, I believe Painter was wrongfully decided. And in this case, Painter leaves First Wife with essentially no remedy.
The purpose of an equitable distribution proceeding under Chapter 50 is to identify, classify, and distribute marital/divisible property. N.C. Gen. Stat. § 50-20 (1994). Once *127 marital/divisible property has been distributed, that property becomes the sole property of the spouse to whom it was distributed. Id.
The purpose of an estate proceeding under Chapter 28A is to distribute the assets owned by the deceased. See N.C. Gen. Stat. § 28A-22-1 (1994) ; accord Azalea Garden Bd. & Care, Inc. v. Vanhoy , 196 N.C. App. 376, 390, 675 S.E.2d 122, 131 (2009).
But where the deceased has marital/divisible property that is subject to an ongoing Chapter 50 equitable distribution proceeding, it is first the duty of the district court to divide the marital/divisible property between the deceased spouse and his widow. See N.C. Gen. Stat. § 50-20(l) (1994) ; see also N.C. Gen. Stat. § 28A-19-19 (1994). Once the marital/divisible property has been divided, then it is the duty of the executor of the deceased spouse in the Chapter 28A proceeding to distribute the deceased spouse's assets, including the assets which were his separate property and the marital/divisible assets which were distributed to him in the Chapter 50 proceeding. Id.
Turning to my issue with Painter , under Chapter 50, the district court divides marital/divisible property. As the Painter court recognized, in the process of equitable distribution, an "in-kind" distribution of property is preferred.
*400 Painter , 163 N.C. App. at 529, 594 S.E.2d at 219. An "in-kind" distribution means that the district court has been able to achieve an equitable distribution simply by distributing some of the marital/divisible property to one spouse and the rest of the marital/divisible property to the other spouse.
But in some circumstances, an equitable distribution cannot be achieved because of the nature of the marital/divisible property. For instance, the marital/divisible property may include a large asset which cannot be divided and which should not be sold; e.g., an interest on a family business or the marital home. In those circumstances, the trial court is allowed to make an "inequitable" distribution of the marital/divisible property-by distributing a larger portion of those assets to one of the spouses-and then provide for a "distributive award," whereby the spouse receiving a greater share of the marital/divisible property (the "payor-spouse") is required to pay money to the other spouse (the "payee-spouse"), either up front or over time, to make up the difference. N.C. Gen. Stat. § 50-20(b)(3) (1994).
A "distributive award," however, does not represent a distribution of any specific marital/divisible property, as all of the marital/divisible property has already been distributed. And the award cannot represent a distribution of the payor-spouse's separate property, as the district court does not distribute separate property in an equitable distribution proceeding. Rather, the distributive award is an obligation of the payor-spouse to pay money out from his[1] assets, whether from his separate property,[2] from marital/divisible property he was distributed,[3] or from income he earns/receives in the future.
*128 *401 Therefore, if a payor-spouse dies still owing payments under a distributive award, the payee-spouse can enforce the payor-spouse's obligation by making a claim from the assets of the payor-spouse's estate. The payee-spouse would, though, have to stand in line with the other creditors of the payor-spouse pursuant to Chapter 28A. The district court has no jurisdiction in a Chapter 50 action to compel the distribution of property in the payor-spouse's estate.[4]
This seems to have been of concern in Painter , that the payee-spouse in that case would have to stand in line with other claimants and that she, therefore, might not be fully paid her award out of the assets in her ex-husband's estate. The Painter court, therefore, created a remedy in that case by holding that some of the assets held by the payor-spouse at death would be deemed to actually be the assets of the payee-spouse, and, therefore, not part of the payor-spouse's estate subject to Chapter 28A. I believe that this "remedy" is not proper for a number of reasons.
First, the remedy ignores the statutory scheme of equitable distribution, that all of the marital/divisible property has already been distributed. The distributive award itself is not an award of any specific property. Rather, it is merely an obligation of the payor-spouse to pay money from his assets.
Second, the General Assembly has already provided a means to protect a payee-spouse from non-payment of a distributive award. Specifically, the trial court can secure the distributive award by placing a lien on specific property owned by the payor-spouse. N.C. Gen. Stat. § 50-20(e) ("The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.")[5] The trial court can secure the award at the time the award is made. For instance, if the payor-spouse is being distributed the marital home and *402 there are not enough other marital/divisible assets to achieve equity, the trial court may make a distributive award and secure that award with a lien on the marital home; if the payor-spouse or his estate falls behind on paying the award, the payee-spouse could enforce the lien to satisfy the obligation. Alternatively, the trial court can secure the award sometime after the award is made. For instance, if the payor-spouse inherits an asset after the divorce, the payee-spouse can move the trial court in the cause to secure a previously unsecured obligation to pay a distributive award with the inherited asset.
Third, the remedy required by Painter would be unworkable or produce unintended outcomes in many instances. Specifically, Painter directs that the administrator of the payor-spouse's estate must separate out a portion of the assets that were held by the payor-spouse at death and to treat that portion as the property of the payee-spouse. Where the estate contains illiquid assets, which assets would belong to the payee-spouse and not be part of the estate?
Consider, if a payor-spouse who owed $100,000 of a distributive award and died owning two assets worth $100,000; one, he is leaving to his brother and the other to his sister. Would both buildings have to be sold, with $50,000 coming from the proceeds of each asset? Or could one be sold to satisfy the obligation? Which heir would be forced to lose out? Is it up to the executor? In other words, the distributive award is not tied to any specific property.
Or consider if the payor-spouse died with a $200,000 asset (e.g., building or stock account) with a $150,000 lien against it? Would the payee-spouse be entitled to the first $100,000 from the sale of that asset under *129 the fiction that this portion is her property, leaving the lienholder undersecured?
Equitable distribution is intended to distribute specific marital/divisible property. But a distributive award is not tied to any specific property (though it may be secured by specific property) and is paid out of the payor-spouse's own property or future income. And when the payor-spouse dies, it would not be uncommon for most or all of the assets held by him at death to be assets that he acquired well after the divorce.
Painter has only been cited once, in an unpublished North Carolina decision; and it was not cited for the issue which I discuss here. In re Estate of Van Lindley , 2007 WL 2247269, *6-7, 2007 N.C. App. LEXIS 1731, *19-20 (N.C. Ct. App. Aug. 7, 2007).
*403 In the present case, Decedent's estate has the obligation to pay First Wife an "amount equal to the present value of the SBP coverage[.]" But for the Painter decision, I believe First Wife has followed the proper procedure. She made a claim in Decedent's estate pursuant to Chapter 28A, to seek some of the assets of Decedent to satisfy her claim. And when her claim was rejected by the executor, she filed this action against the executor, as required under Chapter 28A. As her claim was not secured by the trial court in the Chapter 50 proceeding in the equitable distribution action, though, she would presumably have to stand in line with the other creditors who may also have a claim against Decedent, as provided under Chapter 28A.
I do not believe First Wife has any meaningful remedy in the Chapter 50 action. It is unclear exactly what the district court could order the executor to do as it has no jurisdiction to direct Second Wife to distribute any specific asset belonging to Decedent's estate.[6]
I encourage our Supreme Court to bring clarity to the application of Chapter 28A where a "distributive award" has been made in a previous Chapter 50 action. And if this matter is not appealed to the Supreme Court, I encourage the General Assembly to consider the law in light of Painter .

The masculine pronoun is used here, as the payor-spouse in the present case is the Decedent husband.

The trial court may consider the payor-spouse's separate property when making a distributive award to the payee-spouse. Comstock v. Comstock , 240 N.C. App. 304, 321, 771 S.E.2d 602, 614 (2015) (holding that though payor-spouse's IRA was not marital property, and therefore was not subject to equitable distribution, the IRA "was available a resource [of the payor-spouse] from which the trial court could order a distributive award").

The trial court may consider the payor-spouse's ability to refinance the marital home he was awarded to provide cash to pay a distributive award to his ex-wife. Peltzer v. Peltzer , 222 N.C. App. 784, 791-92, 732 S.E.2d 357, 362-63 (2012). The point being is that the payor-spouse can pay the award from any of his sources, but that in making the award, the trial court determined that the husband had the ability to pay it through one source, the refinance of the marital home he received. Of course, if the payor-spouse had failed to make the payment, his ex-wife could have moved in the cause for a contempt order, compelling her ex-husband to pay her the award. And if at any such contempt hearing, her ex-husband is able to show that he, in fact, had no present ability to pay the award because he was unable to refinance the house (due to bad credit, etc.), the ex-wife could perhaps sue to reduce the award obligation to a judgment, which could be docketed. Further, in making the award, the trial court in its equitable distribution order could secure the future award obligation with the marital home or other assets of the payor-spouse. N.C. Gen. Stat. § 50-20(e) ("The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.")

Of course, if the district court in a Chapter 50 proceeding has already awarded some specific asset to the surviving spouse in the equitable distribution order and that asset is still held by the deceased spouse at the time of his death, that asset would not be part of the estate but would be the property of the surviving spouse.

The fact that the General Assembly provides that a lien may be placed on assets to secure a distributive award is a strong indication that the General Assembly intended a distributive award to be considered an obligation of the payor-spouse to pay out of his assets.

Of course, as stated above, had Decedent died before marital/divisible property had been distributed under Chapter 50, then it is the role of the district court in a Chapter 50 action to divide the marital/divisible property. And once divided, then it would be the role of the executor under Chapter 28A to further distribute that property along with Decedent's separate property. But here, the marital/divisible property was distributed under Chapter 50 in 1999.